United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CURTIS BERRIEN, ROSE HUERTA, TINA MUSHARBASH, FERN PROSNITZ, MICHAEL ANDLER, MARCUS BONESS, TIMOTHY BONNELL, RICHARD BUFORD, ELAINE CEFOLA, KENNETH DAVIS, JEROME GAROUTTE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

NEW RAINTREE RESORTS INTERNATIONAL, LLC; RVC MEMBERS, LLC; DOUGLAS Y. BECH,

Defendants.
________________________________/

No. C 10-3125 CW

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Docket No. 44)

Plaintiffs Curtis Berrien, Rose Huerta, Tina Musharbash, Fern Prosnitz, Michael Andler, Marcus Boness, Timothy Bonnell, Richard Buford, Elaine Cefola, Kenneth Davis and Jerome Garoutte charge Defendants New Raintree Resorts International, LLC (RRI); RVC Members, LLC; and Douglas Y. Bech with intentional interference with contractual relations and violations of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq. Plaintiffs now move for class certification. Defendants oppose Plaintiffs' motion. The motion was heard on June 9, 2011. Having considered oral argument and the papers submitted by the parties, the Court GRANTS Plaintiffs' motion for class certification.

United States District Court
For the Northern District of California

BACKGROUND

Plaintiffs are California residents and members of the Raintree Vacation Club. Club membership is similar to a vacation timeshare insofar as it entitles Club members to access Club-affiliated vacation resorts. However, unlike traditional timeshare arrangements, Club members do not own an interest in any real property. Instead, they purchase "a beneficial trust interest in a specific Club resort property," and assign that interest to non-party RVC Exchange, LLC, in exchange for a Club membership. Compl. ¶ 20. This transaction is governed by a written agreement, generally entered into with RVC Exchange, which is a subsidiary of RRI.

Plaintiffs allege that RRI directs the operation of the Club and that RVC Members, another RRI subsidiary, manages the Club-affiliated resorts. Bech is the chief executive officer of RRI and a principal of both RRI and RVC Exchange. Defendants are not parties to the contracts associated with Plaintiffs' memberships. Compl. ¶ 22.

In June 2009, Bech sent a letter to Plaintiffs and other Club members, informing them that a "Special Assessment" would be charged to "fund and implement needed improvements" at Club-affiliated resorts. Levine Decl., Ex. I at BONNELL00049. Bech explained that various maintenance and upgrade projects had been deferred because of "continuously rising operating and energy costs." Id. A credit card authorization form sent along with billing statements for the Special Assessment stated that Club members would be barred from making reservations at Club-affiliated resorts until the Special Assessment was paid in full. Several

Club members complained. On July 2, 2009, Defendants withdrew the Special Assessment. A postcard sent to Club members indicated that Special Assessment payments made would be refunded. The postcard, however, also stated that there were plans to "re-issue the Special Assessment" in the future. Id., Ex. M.

In or about November 2009, another Special Assessment was charged and made payable to RVC Members. A credit card authorization form related to this Special Assessment, like the one associated with the earlier one, stated that Club members would be precluded from making reservations if their Special Assessment payments were not current. The Club's website likewise stated, "Any Member whose account is not current will not be able to use their Membership to make or use reservations." Levine Decl., Ex. P.

Plaintiffs complain that Defendants charged the Special Assessment without authority to do so. They seek to certify a class of individuals defined as: "All persons who reside in the State of California and were charged the Special Assessment that was issued to owners of Raintree Vacation Club and related timeshare interests in or around October or November 2009." Plaintiffs represent, and Defendants do not dispute, that the proposed class encompasses more than 5,000 Club members. Plaintiffs ask that they be appointed as class representatives and that their counsel, Girard Gibbs LLP, be named as class counsel.

LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule

United States District Court
For the Northern District of California

23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

United States District Court
For the Northern District of California

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). The court must conduct a "'rigorous analysis,'" which may require it "'to probe behind the pleadings before coming to rest on the certification question.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Falcon, 457 U.S. at 160-61). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Dukes, 131 S. Ct. at 2551. To satisfy itself that class certification is proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

DISCUSSION

Defendants do not argue that Plaintiffs do not meet Rule 23(a)'s numerosity, commonality and adequacy requirements. Having considered Plaintiffs' papers, the Court concludes that Plaintiffs satisfy these requirements.

Defendants argue, however, that Plaintiffs do not demonstrate that they would be adequate class representatives, that common

United States District Court
For the Northern District of California

questions of fact predominate over individual issues and that a class action would be a superior method of adjudication. Defendants' arguments are considered below.

I. Adequacy

Rule 23(a)(4) of the Federal Rules of Civil Procedure establishes as a prerequisite for class certification that "the representative parties will fairly and adequately protect the interests of the class." This can only be done if the named plaintiffs do not have conflicts of interest with other class members. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). However, the mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical. See Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts."); Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara, 609 F.2d 944, 948 (9th Cir. 1979) ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification."); Blackie, 524 F.2d at 909 (noting that class members might have differing interests at later stages of litigation, but that "potential conflicts" do not present a valid reason for refusing to certify a class).[1]

Defendants identify five conflicts of interest that Plaintiffs and other putative class members may have with other members of the

---

[1] Defendants cite Valley Drug Co. v. Geneva Pharmaceuticals, Inc., in which the Eleventh Circuit held that named plaintiffs with potential conflicts with the interests of the absent class members were not adequate class representatives. 350 F.3d 1181, 1189 (11th Cir. 2003). This conclusion does not appear to comport with Ninth Circuit precedent.

United States District Court
For the Northern District of California

proposed class.[2] The Court considers each separately below.

A. Intra-class Conflict Between Putative Class Members Who Have Paid the Special Assessment and Those Who Have Not Paid

Defendants note that approximately seventy percent of the putative class has paid the Special Assessment. They argue that this statistic undercuts Plaintiffs' contention that the Special Assessment was improper. They also contend that the statistic demonstrates that some putative class members favor upgrades and renovations to the Club-affiliated resorts. Defendants assert that, if Plaintiffs were to prevail, the putative class would be harmed.

The seventy-percent statistic does not demonstrate that Plaintiffs' interests conflict with those of the proposed class or that an intra-class conflict exists. Although many putative class members may have paid the Special Assessment, it does not follow that the charge was authorized or that Club members believed it was. As noted above, to enjoy their memberships, Club members were required to pay the Special Assessment.

Furthermore, that Plaintiffs are challenging the Special Assessment is not contrary to other Club members' potential interest in upgrading and renovating a facility. Defendants' reliance on Langbecker v. Electronic Data Systems Corp., 476 F.3d 299 (5th Cir. 2007), is unavailing. In Langbecker, the Fifth Circuit identified several intra-class conflicts, including one based on the plaintiffs' request for the dissolution of an investment vehicle in which some class members may have desired to

---

[2] Defendants do not challenge the adequacy of Plaintiffs' counsel.

continue investing. Id. at 315. Here, Plaintiffs are not seeking to deprive absent class members of a product or service they enjoy. Defendants' assertion that putative class members would be harmed if Plaintiffs prevail is unsupported. There is no evidence that Plaintiffs' success would cause existing upgrades or renovations to be dismantled. Nor do Defendants contend that they would cease making improvements to the Club-affiliated resorts. Indeed, Defendants note that Plaintiffs "have not sought to halt the renovations and upgrades being funded by the Special Assessment." Defs.' Opp'n at 9:1-2. Further, Defendants exact maintenance fees from Club members, indicating that Defendants were obliged to maintain the resorts.

Accordingly, the distinction between paying and non-paying putative class members does not pose a fundamental conflict that precludes class certification.

B. Intra-Class Conflict Between Putative Class Members Who Support Upgrades and Those Who Do Not

Defendants' second argument is similar to their first. Citing various declarations, Defendants contend that some putative class members desire upgrades and renovations, whereas others do not. Defendants again suggest that, if Plaintiffs were to prevail, existing upgrades and renovations would be removed and no further improvements would be made. However, there is no evidence to this effect. Thus, the harm that Defendants threaten is not substantiated.

Accordingly, that some putative class members may desire upgrades and others may not does not pose a fundamental conflict that precludes class certification.

United States District Court
For the Northern District of California

C. Intra-Class Conflict Between Active and Inactive Club Members

Defendants argue that there is a fundamental intra-class conflict between current, or active, Club members and former, or inactive, Club members. They assert that those in the latter category have no incentive to support renovations at the Club-affiliated resorts.

This purported conflict simply rehashes Defendants' previous arguments. Although it is likely true that inactive Club members no longer have an interest in improving the facilities, this is not contrary to active members' likely desire for renovations.

Accordingly, that some putative class members may have active Club memberships and others may not does not pose a fundamental conflict that precludes class certification.

D. Intra-Class Conflict Between Individuals Who Use Their Membership Frequently And Those Who Do Not

Defendants assert that the interests of putative class members who make regular use of their membership conflict with the interests of those who use their membership infrequently. This argument, however, is based on the same unpersuasive contention that some putative class members may favor upgrades and others may not. Accordingly, that class members may differ in the frequency with which they use their memberships does not pose a fundamental conflict that precludes class certification.

E. Intra-Class Conflict Between Class Members Who Prefer a One-Time Assessment Over an Increase in Annual Maintenance Fees

Defendants contend that Plaintiffs' challenge to the Special Assessment conflicts with the interests of class members who prefer a one-time fee assessment over an increase in annual maintenance

United States District Court
For the Northern District of California

dues. They argue that a one-time fee permits Club members to realize benefits more quickly. However, Defendants do not offer evidence that the one-time Special Assessment hastened improvements at the Club-affiliated resorts. Thus, there is no actual conflict between Plaintiffs and putative class members who desire to pay any Special Assessment as a one-time lump sum.

Defendants do not present any actual fundamental conflicts between Plaintiffs and the proposed class, and Plaintiffs' papers demonstrate that they can serve as adequate class representatives. Accordingly, the Court concludes that the adequacy requirement is met.

II. Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks and citations omitted). "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed. 1986)). A court must make "some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate . . . ." In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008) (citation and internal

United States District Court
For the Northern District of California

quotation marks omitted).

Below, the Court considers each cause of action to determine whether common issues predominate with regard to that cause of action.

A. Claim for Intentional Interference with Contractual Relations

To prevail on a claim for intentional interference with contractual relations, a plaintiff must prove "(1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (citations omitted). Defendants contend that common questions of fact do not predominate with respect to the fourth and fifth elements of this claim.

Defendants argue that the determination of whether an actual breach occurred will require an individualized inquiry into whether each Club member's sales representative discussed the potential for a Special Assessment. This is because, according to Defendants, although Club members' agreements did not provide for Special Assessments, the contracts did not bar their use and such charges might have been permissible. This argument is not persuasive. The record does not show that the agreements contained any term concerning Special Assessments, and Defendants do not identify any provision that may be susceptible of an interpretation that they were authorized. See Wolf v. Superior Court, 114 Cal. App. 4th

United States District Court
For the Northern District of California

1343, 1350-51 (2004) (noting that, under California law, courts must provisionally admit extrinsic evidence to determine whether contract provision is reasonably susceptible of a particular meaning); see also Trident Center v. Conn. Gen. Life Ins. Co., 847 F.2d 564, 568-69 (9th Cir. 1988). Indeed, Defendants do not assert that the contracting parties intended to include Special Assessments as part of the agreement. Thus, an individualized inquiry involving extrinsic evidence, such as sales representatives' statements, is not necessary.

Defendants also point to the fact that some Plaintiffs and putative class members paid a Special Assessment imposed in 2001 and 2002. Defendants contend that these payments require an individualized inquiry into whether these Club members believed that the Special Assessment was consistent with the terms of their contracts. A course of conduct could provide insight into contracting parties' intent and be relevant to interpreting potentially ambiguous terms of a contract. Wolf, 114 Cal. App. 4th at 1356. However, as noted above, Defendants identify no contractual provision on which this conduct could shed light. As a result, an investigation into each paying Plaintiff or class member's understanding is unnecessary.

Finally, Defendants assert that damage, or injury, cannot be demonstrated with common proof. However, Plaintiffs maintain that putative class members who paid the Special Assessment were damaged by paying money wrongfully demanded by Defendants. Those putative class members who did not pay, according to Plaintiffs, were damaged because they were precluded from enjoying their membership rights. These types of damage do not require consideration of each

member's circumstances.

Plaintiffs demonstrate that, with respect to their claim for intentional interference with contractual relations, common questions of law and fact predominate. Defendants' arguments do not warrant a contrary conclusion.

B. UCL Claim

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003). Plaintiffs' UCL claim is premised on the statute's unfairness prong.[3]

[3] In their reply, Plaintiffs indicate that they intend to pursue a UCL claim under the statute's fraud prong based on Defendants' representations concerning the effect of a failure to pay the Special Assessment. Plaintiffs compare Defendants' statements that a Club member's default on the Special Assessment will result in the forfeiture of their memberships to Bech's current declaration, which states that the "non-payment of the Special Assessment, however, has not been used by Raintree Vacation Club, nor will it be used in the future, as a basis for the forfeiture of a member's Club membership or associated timeshare interest." Bech Decl. ¶ 6.

Although it is true that, under its fraud prong, the UCL does not require a showing of reliance by each putative class member, the named plaintiffs must show that they relied on the challenged statement. In re Tobacco II Cases, 46 Cal. 4th 298, 318 (2009). Plaintiffs do not point to evidence that all of them relied on the (continued...)

United States District Court
For the Northern District of California

Citing Lazar v. Hertz Corp., 69 Cal. App. 4th 1494 (1999), Defendants assert that a business practice cannot be unfair if it is legal. Thus, Defendants contend, common questions of fact do not predominate with respect to this claim because it is necessary to determine whether the putative class members' contracts authorized the Special Assessment, which requires an individualized inquiry into each putative class member's intent when the contracts were executed. This contention is rejected for the reasons stated above.

Defendants also argue that, under two of the three tests employed by California courts to determine whether a defendant engaged in an unfair business practice against a consumer,[4] this Court must determine whether each Club member's alleged injury was

---

[3](...continued) purported misstatements. Thus, the current record does not support certifying a class action with respect to a UCL fraud claim.

[4] In Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company, 20 Cal. 4th 163 (1999), the California Supreme Court enunciated the elements of a UCL claim brought by competitors under the UCL's unfair prong. Since then, California courts of appeal have applied three tests to evaluate claims by consumers under the UCL's unfair prong. See, e.g., Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735-736 (9th Cir. 2007); Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010). Under one test, a consumer must allege a "violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition." Drum, 182 Cal. App. 4th at 256. Under the second test, a consumer is required to plead that (1) a defendant's conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and (2) "the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Id. (citation and internal quotation marks omitted). The third test, which is based on the Federal Trade Commission's definition of unfair business practices, requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Id. at 257 (citation and internal quotation marks omitted). Defendants' argument implicates the second element of the second and third tests.

United States District Court
For the Northern District of California

outweighed by the benefits of the Special Assessment. Defendants contend that those Club members who relinquished their memberships after the Special Assessment was charged might have realized no benefit, whereas those who maintained their memberships might have. However, under Plaintiffs' theory of liability, the alleged harm was the assessment of an unauthorized fee. Thus, the appropriate inquiry will be whether the charge was outweighed by the benefits, if any, that Club members could have enjoyed. That a particular Club member decided to forego any benefits is immaterial.

Defendants' arguments are unavailing. Plaintiffs demonstrate that, with respect to their UCL claim under that statute's unfairness prong, common questions of law and fact predominate.

C. Affirmative Defenses

Defendants contend that their affirmative defenses of voluntary payment and equitable offset require consideration of each putative class member's circumstances.

1. Voluntary Payment

California law provides that payments "'voluntarily made, with knowledge of the facts, cannot be recovered.'" Steinman v. Malamed, 185 Cal. App. 4th 1550, 1557 (2010) (quoting W. Gulf Oil Co. v. Title Ins. & Trust Co., 92 Cal. App. 2d 257, 266 (1949)). This affirmative defense is subject to the exception that payments "'of illegal claims enforced by duress, coercion, or compulsion, when the payor has no other adequate remedy to avoid it, will be deemed to have been made involuntarily and may be recovered, but the payment must have been enforced by coercion and there must have been no other adequate means available to prevent the loss.'" Steinman, 185 Cal. App. 4th at 1558 (quoting W. Gulf Oil, 92 Cal.

United States District Court
For the Northern District of California

App. 2d at 264). Duress, for the purposes of this defense, requires two inquiries: (1) whether a "reasonably prudent man" would have found "that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe" and (2) whether the party demanding payment acted wrongfully, "with the knowledge that the claim asserted is false." Steinman, 185 Cal. App. 4th at 1558-59 (citation and internal quotation marks omitted). The first component raises "a question for the trial court's determination." Id. at 1558.

Assuming that the voluntary payment affirmative defense applies to consumer actions, Defendants' invocation of it in this case does not compel individualized inquiries. Plaintiffs contend that any payment of the Special Assessment was made under duress. Under Steinman, the Court must first consider whether a reasonably prudent person would have found that making the payment was necessary, which is an objective question that does not require consideration of each Club member's circumstances. The second analysis focuses on Defendants' actions and knowledge, and likewise does not mandate individual inquiries.

Accordingly, Defendants' proposed voluntary payment affirmative defense does not defeat Plaintiffs' showing with regard to predominance.

2. Equitable Setoff

Defendants contend that they are entitled to an equitable setoff for the value they may have conferred on Plaintiffs or other putative class members through improvements funded by the Special Assessment. Assuming that such a defense applies here, it pertains to the amount each class member may receive as damages. "The

United States District Court
For the Northern District of California

potential existence of individualized damage assessments, however, does not detract from the action's suitability for class certification." Yokohama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010).

Thus, Defendants' proposed equitable setoff defense does not preclude class certification.

III. Superiority

Defendants argue that a class action is not a superior method to resolve this litigation because individual inquiries are required. However, as already explained, individualized inquiries are not necessary. Having considered Plaintiffs' papers, the Court concludes that this action satisfies Rule 23(b)(3)'s superiority requirement. Because Plaintiffs meet the requirements set forth by Rule 23, the Court certifies the proposed class.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for class certification. (Docket No. 44). The following class is hereby certified pursuant to Rule 23(b)(3): "All persons who reside in the State of California and were charged the Special Assessment that was issued to owners of Raintree Vacation Club and related timeshare interests in or around October or November 2009." Plaintiffs Curtis Berrien, Rose Huerta, Tina Musharbash, Fern Prosnitz, Michael Andler, Marcus Boness, Timothy Bonnell, Richard Buford, Elaine Cefola, Kenneth Davis and Jerome Garoutte are appointed to be representatives for this class, and their counsel, Girard Gibbs LLP, is designated as class counsel.

//

//

United States District Court
For the Northern District of California

The hearing on the parties' cross-motions for summary judgment and a further case management conference are set for February 16, 2012 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 8/15/2011

CLAUDIA WILKEN
United States District Judge